UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KEVIN THURMON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 17 C 5477 |
| | ) | |
| BIMBO BAKERIES, U.S.A., | ) | Judge Rebecca R. Pallmeyer |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Kevin Thurmon and a co-worker were terminated from their positions with Defendant Bimbo Bakeries, U.S.A.,[1] after managers concluded that the two had "punched in" one another's time cards. Thurmon filed this lawsuit to challenge his termination, arguing that it was in fact based on his race. Defendant has moved for summary judgment [38], arguing that the undisputed facts show that the time card falsification, not Thurmon's race, was the reason for the discharge. Thurmon has not responded to the motion, despite several extensions of time, and the court concludes it should be granted.

## DISCUSSION

Thurmon has not responded to Defendant's Rule 56.1 statement of facts, but the court has reviewed that statement and the supporting materials. In brief, the record shows that Plaintiff's supervisor, Bruno Carillo, noted that Thurman and his co-worker had suspiciously similar or identical punch-in times on several dates. (SOF ¶¶ 7, 20.) Senior Manager Steve Rhodes and his subordinate, Scott Carroll, reviewed Plaintiff's and the co-worker's time cards. (*Id.* ¶ 23.) They also looked at video footage of the time clock; that footage showed occasions in which Thurmon and the co-worker appeared to punch in for one another. (*Id.* ¶¶ 24, 26-29, 31.)

---

[1] Plaintiff named "Bimbo U.S.A." as the Defendant in this case, but Defendant explains that it was incorrectly identified. (Def.'s Stmt. of Undisputed Material Facts [hereinafter, "SOF"] [39], at 1.) The court will direct the Clerk to correct the caption.

Rhodes and Carroll interviewed Thurmon and his co-worker. (*Id*. ¶ 32.) Plaintiff denied wrongdoing, but his co-worker acknowledged having "made a huge mistake" to "help a co-worker that was running behind . . . " (*Id*. ¶¶ 32, 36, 37*.*) Rhodes concluded that both should be terminated for falsification of records. (*Id*. ¶¶ 38, 39.) Thurmon submitted a grievance, but after reviewing the video footage, the union declined to pursue it. (*Id*. ¶¶ 47-50.) And although Thurmon contends he is innocent, he has acknowledged that managers believed he falsified time records, and has no evidence that any other worker who took such action was not terminated. (*Id*. ¶¶ 45, 46.) In fact, Defendant has presented evidence that another employee, identified as Hispanic, was terminated two weeks after Plaintiff's termination, also for falsification of time records. (*Id*. ¶¶ 63-67.)

The record amply supports Defendant's argument that suspicion surrounding Thurmon's time records, not his race, was the reason for his discharge. Defendant's motion for summary judgment anticipated arguments Thurmon might make to oppose summary judgment, and the court agrees that none would establish a dispute of material fact with respect to his claims. Thurmon recalled an incident that occurred well prior to his discharge in which Scott Carroll stepped out on to the dock where Plaintiff and other workers were standing and asked, "Why is it always the black guys still here in the morning?" Plaintiff recalls that he and the others "laughed" because "it was funny." (*Id*. ¶ 70.) Whatever Carroll may have meant by his question, it does not establish that the decision to discharge Plaintiff, made by Rhodes, was tainted by racial animus. Plaintiff himself testified that Carroll "was ever offensive to me because he was not my supervisor." (*Id.*)

Plaintiff has identified two white workers he contends were also guilty of misconduct but not terminated. Neither of these workers was truly similarly situated, however. The first, Dan E., had been accused, about five years before Plaintiff's discharge, of stealing a package of cinnamon rolls. But an investigation confirmed Dan E.'s explanation that he had taken the rolls because they were on the "wrong shelf," and that he intended to place them where they belonged,

but forgot to do so. (*Id.* ¶¶ 78-80.) The other purported comparator was terminated for two episodes of "no call/no show," but was allowed to return to work under a "last chance" agreement after a union grievance investigation that showed he had in fact attempted to call in. (*Id.* ¶ 74.)

Finally, the court notes that in discovery, Thurmon sought information about financial losses to Defendant as a result of the alleged falsification of time records because, as he put it, "if there was no losses what was the motivation." (Plaintiff's Motion to Compel [33].) But the fact that employee misconduct did not cause financial harm does not support the conclusion that such misconduct is not the genuine reason for adverse action. As Defendant notes, misrepresentations and dishonest behavior are legitimate, nondiscriminatory reasons for discipline or termination. *See Grant v. Trustees of Ind. Univ.*, 870 F.3d 562, 570 (7th Cir. 2017); *Bernier v. Morningstar, Inc.*, 495 F.3d 369, 376 (7th Cir. 2007). The evidence in this case would not "permit a reasonable factfinder to conclude that the plaintiff's race" was the reason for his discharge. *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016).

Defendant filed its motion for summary judgment [38] in August 2018, giving Plaintiff, a pro se litigant, the appropriate Rule 56.2 notice [43]. The court entered a briefing schedule that called for Plaintiff to respond on September 19, 2018 [44]. At Plaintiff's request, the court extended that date to October 24, 2018 [46]. Then, after a lawyer appeared on Plaintiff's behalf, the court extended the response date yet again, to November 28, 2018 [50]. When counsel sought a further extension, the court granted that request, to January 11, 2019 [53], but warned that this extension would be the last one.

A week later, counsel for Mr. Thurmon moved for leave to withdraw [54]. The court granted that motion on December 12, 2018 [57], but explicitly noted that the January 11, 2019 response date remained in place. There has been no response from Plaintiff, nor has he sought additional time, even after Defendant submitted a brief reply.

## **CONCLUSION**

Defendant's motion for summary judgment is supported by the record and is effectively unopposed. The motion [38] is granted. Judgment will be entered in favor of Defendant.

ENTER:

Dated: February 11, 2019

REBECCA R. PALLMEYER
United States District Judge